Okay, our third case this morning is number 17, 1826, Dodo Denshi Corporation Limited versus Mitsubishi Cable Industries, Mr. Coddington. Good morning, may it please the court. My client, Dodo Denshi, is a Japanese company that manufactures wire coils. Their 888 patent is using a square, talks about in the background, using a square wire so that you can increase the packing of the wires within a coil. If you use a square, you can get more wire packed in a coil than you can a round wire. And that's an improvement because if the packing factor increases, the performance of the coil increases, you can make smaller coils with the same power. But then the patent makes it very clear that ideal square wires are not good because of the sharp edges at the corners of the wire, which would cut into the insulating of the wire and therefore would short circuit the coil. So to overcome that problem, the 888 patent specifically claims chamfered corners, which means it's got an arc at the edge to eliminate that squareness. And they claim very specific sectional area ratios, which is the ratio of the wire cross-section to a circle, or very specific circumferential ratios, which is the border around the wire relative to a circle. And then claims two and four recite arc-shaped chamfered sections, which was construed as having a constant radius throughout that curve. Now the first issue where we think the board erred is that their conclusion of anticipation was improperly supported on ambiguous references. And that was an argument... This is because R, in your view, doesn't clearly mean radius? That's correct. It's unclear. And Ray Turley... Clear. I'm sorry? Why is it unclear? Because there are inconsistent teachings throughout those prior art references that support something else. But the evidence presented here was pretty clear that R means radius. That was a contention raised by their expert. The board agreed with that expert. But it was more than a contention, they actually presented evidence in that regard. Right, but that evidence is inconsistent with the other teachings in the art that says R is a shape, R is a part, which was referred to... What about looking at Sugita, for example, which I think is one of the more difficult cases for you to rely on and say that R doesn't mean radius. What in Sugita makes you think that it's confusing or in any way ambiguous what R is, where it says the R of the corner sections is 0.02 millimeters to 0.6 millimeters and actually use a measurement for it? Because in the other section it refers to a shape R. For example, in the appendix 79 paragraph 3, reverse there as a shape. Radiuses are not shapes. Radiuses are... Wait, I'm fucked. Where is it that you're referring to? It's in the Sugita patent, I think it's appendix 79 at paragraph 3. It says... It's a shape R of the corner sections. So what do you think R is when they give a measurement? That's our point, is that... No, but I mean, what could it possibly be besides radius when they're giving a measurement? It could be another value of a dimension. It's unclear. What could that dimension be? Our point is we don't know. But what could it be other than radius? That's my problem. You say you don't know what it is, but I'm having a hard time understanding what it could be other than radius. It could be another value that's not radius. Our point is that it's unclear. It's inconsistent. It can't be ambiguous unless there's another alternative that makes sense. Well, even if you assume that it's radius, it's then unclear that that radius is constant in claims 2 and 4. If you assume it's radius, then it's missing a teaching that it's constant. And that's a critical limitation of claims 2 and 4. Now, our position... Do you concede here today that R means radius in view of the evidence that's been presented? No. I mean, their point was R is typically used... You're arguing it's ambiguous, but you don't... Where's the evidence? Where did someone come in and testify R is ambiguous? Whereas you're arguing in the face of evidence, substantial evidence, significant substantial evidence, that R means radius. Well, the evidence is within Sagitta itself. The evidence is the other inconsistent passages within Sagitta that refer to it as a shape. And if you're going to take R as a radius, that doesn't consistently flow through the Take me to Sagitta where it says that R, as used in the pen, would mean shape. The previous passage that I was referring to at... With Judge Stahl? Page 79, paragraph 3, where it says an R shape. If you put radius in there, it doesn't make any sense. Is there any other place in the reference where you think it refers to R shape or otherwise undermines the view that R means radius? It's that, and then it's the use of R parts in other sections, where if you insert radius, it doesn't make sense. Our point is very simple. It's that concluding that it's radius is inconsistent through the pattern. Therefore, it's unclear. And N. Ray Turley says that if the reference is ambiguous or unclear, you can't use it to sustain an anticipation rejection. Now, maybe the better argument for them would have been to say that it was obvious, but that's not the ground they raised at the Patent Office. They said it was anticipation, and in anticipation rejection, it has to be identical. The disclosure has to be clear. Did you have any expert testimony that R in these prior references means something other than radius? We did not. And it's not attorney argument, and we're not trying to testify as an attorney, or excuse me, as an expert. It's just we're pointing out inconsistent teachings within that spec. You don't need an expert to point to inconsistencies. Well, we have Dr. Klopp, who testified to the other side with respect to Harada, said the use of uppercase R to denote a radius corner is consistent with other patents used by Japanese authors published prior to the priority date of the 88 patent. So here we have evidence of consistent use of R to mean radius. Well, our argument against that was, and as we pointed out in the brief, is that you have both Harada and Tsujita as anticipating references. They both use R. Neither of them cite radius. I understood your argument, but I guess what I'm trying to get to is what evidence did you present to rebut this? Our rebuttal was based on the inconsistent teachings alone. But I'd like to point out that here you have two Japanese patents as prior. You have they're made by Japanese companies. They both don't use the term radius, yet they both define D as diameter. They both use R parts. We just find it hard to believe that those references are clear enough to say that R is radius. And then the latter problem becomes, well, if you assume that it's radius, where in there is a clear disclosure that that R means a constant value throughout? In fact, it discloses ranges. When you say a constant value throughout, you mean a constant value throughout the arc? Throughout the arc, that's correct. So, in other words, the figure itself doesn't help you to resolve that? That's correct. You think it's possible that it could have varying R throughout that arc? That's correct. In fact, it's very hard to tell in Tsujita with the way it's shown. I mean, it almost appears that it's not the same. It's clear in Harada that there could be lumps or some sort because they're milling the sides, and you get these bulges at the corners, and it shows in the figure that it's not constant. Can you address the motivation to combine the teachings of Tsujita and MWSWR? Yeah, I think the problem is that the board, or we find what the board's decision is, is that they're referencing motivation from using ideal square wires, and that's why I started out with this presentation saying that, you know, ideal square wires does provide that more power and less space. But our patent actually taught away from that. There was a problem with having ideal square wires. They wanted to back off the corners and not have them square so that they're rounded. That was to address that insulating problem and short-circuiting. When the board was relying on the motivation to combine that, it says in the Tsujita, more power, less space, Tsujita there was referring to ideal square wires. Tsujita wanted ideal square wires, whereas the claimed invention does not. And, in fact, we said in our background more power, less space. So, therefore, we were making the point that they're simply parroting back, in hindsight, what the motivation was for ideal square wires. But that's not the motivation for the invention of having rounded corners. That was to prevent insulating problems. And also Tsujita also says that the motivation for their system was that they wanted to eliminate twisting of the wire as it came off of the die, which I understand, you know, that would make it harder to coil the wire. So we're contending that that was an improper motivation to combine. Going back to a minute on your suggestion that perhaps the R varies in the arc sections, how do you respond to these sections at the end of Tsujita? For example, in columns 7 and 8, there is an example, too, that refers to the R of the corner sections was 30 micrometers. Yeah. 30 microns there. Thank you. Yeah, sorry. Microns. Isn't that a constant value? And there's examples. There's example 1 that has a constant value radius. There's example 2 that has a constant value radius. How do you respond to that? Well, again, our argument is that the R, what are they referring to as R? I know, but you were starting, what you had said was even assuming that R is radius. There's no disclosure in this particular patent about that R staying constant. And so I'm really just trying to focus in on that part of your argument. Okay. There it doesn't address uniformity or that that R is consistent throughout the entire arc. So when it gives a single value for R, you don't think that that means that it's uniform or consistent? We don't know exactly what that is referring to, and it could be a measurement taken in one spot. We don't know if the resulting wire that was coming out was uniform across the arc. So it's essentially sort of the same argument as before. It's just unclear. Do you want to save the rest of your time? Yes, please. Okay. Thank you, Mr. Connington. Mr. Maragos. Thank you, Your Honor. Good morning. May it please the Court. Sasha Maragos on behalf of the appellees Mitsubishi Cable Industries and Mitsubishi Cable America. Your Honor, this appeal involves the Board holding that all eight claims of the 888 patent are unpatentable for three distinct and independent grounds. First, that all the claims are anticipated by Sujita. Second, and separately, that all the claims were anticipated by Harada. And third, additionally, that all the claims would have been obvious to a person of ordinary skill and the art in view of Sujita plus MWS wire. Now, what patent owner must show is that each of these grounds either rests on a legally erroneous premise or lacks substantial evidence in the record. Patent owner cannot do that for any ground, let alone all three grounds, on which the Board found that the claims are unpatentable. Now, to the extent that patent owner has not waived any of its arguments and they're preserved, all those arguments really relate to pure factual issues. And this Court reviews the Board's resolution of such issues under the deferential substantial evidence standard. And the arguments that Mr. Coddington was making, even if they had evidentiary support, which he admits they do not, would not provide any basis for disturbing any of the Board's findings because under substantial evidence, even if there are two plausible views, as long as the Board adopts one view, which is supported by substantial evidence, which the Board did here, there's no basis to disturb the Board's findings. Now, regarding Sujita, to the extent patent owners preserved any of the arguments, the only remaining issue is whether skilled artisans would understand that Sujita's reference to R constitutes radius. This is a factual issue and all the record evidence uniformly supports the Board's finding. This includes Sujita itself, as well as the undisputed and uncontroverted expert testimony from Dr. Klopp, who explained in detail why artisans would understand that R means radius in Sujita. Now, Mr. Coddington raised an argument about even if R means radius, it's unclear to him whether the disclosure in Sujita shows a constant value of the radius. A couple of points on that. First, that argument was not preserved with respect to Sujita. To the extent it was only made, it was made with respect to Harada, not Sujita. Second, as Judge Stoll pointed out, paragraphs 31 and 34 both specifically identify constant values for the wire of, I believe, 30 micrometers or 3 microns. Now, the same analysis and the same outcome apply to Harada. The only issue that's been preserved there is whether our factual questions with respect to R parts and whether that means radius. The only evidence, again, to support the Board's finding is from Mitsubishi, where there's the Harada reference itself and the uncontroverted testimony of Dr. Klopp. Finally, regarding the Board's finding of obviousness, there's no dispute that the combination of Sujita and MWS wire disclosed every limitation of the claim. The only argument that Mr. Coddington has raised today was, well, he's really saying it was hindsight to combine that by behalf of the Board. And as the Board found in its opinion rejecting the rehearing petition, the hindsight argument was not originally made to the Board and is hence waived. That's appendix page 35, footnote 2. So unless the Court has any further questions, we will rest on our briefs and ask the judgment of the Board be affirmed. Thank you, Mr. Norton. Under the substantial evidence standard, this Court is allowed to look at evidence that detracts away from the Board's decision. And that's what we're asking you to do, is to look at the inconsistent passages within the prior art. And the conclusion here should be that, not that there are two plausible interpretations, it's that there's no plausible interpretation. Because you cannot come up with a definition that is consistent, that can be used consistently throughout that entire Sujita patent. Because at one time it's referring to a dimension, at other times it's referring to shapes, at other times it's referring to parts. So I'd like to rest on that. Thank you, Mr. Cronin.